KAREN DEAN DEWAN *vs.* EDMOND M. DEWAN.

No. 89-P-669.

Middlesex. November 8, 1990. - February 19, 1991.

Present: BROWN, KASS, & IRELAND, JJ.

*Divorce and Separation*, Division of property, Pension benefits.

In a divorce action no error appeared in the judge's acceptance of the testimony of the husband's expert on the present value of the husband's pension or in the judge's assumption that the husband's retirement age would be sixty-five. [135-137]

In a divorce action the judge properly allocated the present value of the husband's pension between the parties; however, he erred in computation by crediting the husband with the amount of his paid-in contributions before dividing the asset. [137-138]

In a divorce action in which the present value of the husband's pension was allocated between the parties, the judge correctly declined to calculate the value on the assumption the wife would receive a survivor annuity [138-139]; he appropriately considered the contemporaneous value of the other major marital asset, the marital residence [139]; and he properly determined that each party pay his or her own counsel fees [139].

COMPLAINT for divorce filed in the Middlesex Division of the Probate and Family Court Department on February 3, 1981.

Following review reported in 399 Mass. 754 (1987), further proceedings were had before *James M. Sweeney*, J.

*Sheldon H. Ganz* (*Karen Dean-Smith* with him) for Karen Dean Dewan.

*Richmond T. Edes* for Edmond M. Dewan.

KASS, J. After two full blown appeals (*Dewan* v. *Dewan*, 17 Mass. App. Ct. 97 [1983] ["*Dewan I*"], and *Dewan* v. *Dewan*, 399 Mass. 754 [1987] ["*Dewan II*"])[1], this conten-

---

[1]There was also a trip before a single justice of this court in connection with proceedings in the Probate Court following *Dewan I*. That had to do with whether the Probate Court judge could, without both parties' consent

tious couple are once again before an appellate tribunal. The subject is still the same: how to value and distribute the employee pension benefits accrued by the husband during the marriage. What is left to argue about falls into the category of mechanical details, but those details translate into money.

*Dewan I*, at 100, decided that the amount paid into a retirement pension was not the measure of its value for purposes of equitable distribution of property upon divorce. *Dewan II*, at 757, decided that, if there are sufficient other assets available in the marital estate, it is better to find the present value of the future pension benefits, and to make a distribution of marital assets taking that present value into account. This had the merit of a clean break at the time of the divorce judgment. If there were not sufficient other assets in the marital estate to be distributed, it would be preferable to make equitable distribution of the pension benefits when and if received. *Ibid.* To take a simple example, suppose that the marital estate contained $200,000 in United States Treasury notes, the husband had a pension with a present value of $100,000, and the judge had determined to make a fifty-fifty division of that marital estate. Each spouse was to receive $150,000. Under *Dewan II*, the wife will receive $150,000 in treasury notes, and the husband will receive $50,000 in treasury notes and retains his pension, with its present value of $100,000.

In the case at hand, the major asset other than the husband's pension was the marital residence. *Dewan II*, at 760, had concluded with an instruction to determine the present value of the husband's pension as of the date of the calculation. At that time (May-July, 1988), the marital residence had a value over the mortgage of $260,000, one of the few points of fact upon which the parties agreed.

but at the expense of the husband, appoint a lawyer to report to the court on the present value of the husband's retirement pension. The single justice decided that the Probate Court judge was without authority to appoint an investigator at the expense of one of the parties. *Dewan* v. *Dewan*, Appeals Court Single Justice Docket No. 84-0178-CV.

Concerning the present value of the husband's pension (he was employed by the United States as a physicist), the judge heard opinion testimony from expert witnesses for the wife and the husband. Both were consulting actuaries. The wife's expert gave his opinion that the present value of the pension was $628,222 and that if the pension were paid in a joint and survivor form, the present value would be $730,067. The husband's expert offered four opinions: assuming what he described as a "normal" retirement age of sixty-five, a present value of $186,804; assuming a late retirment age of seventy, a present value of $96,970; assuming an early retirement age of sixty-two, a present value of $265,985; assuming a still earlier retirement age of fifty-seven, a present value of $455,989. As is apparent, much depends on what retirement age an actuary assumes. Other important variables included assumptions about the amount of the annual benefit and about the present value factor to be applied to each one dollar of anticipated benefit.

The judge chose the present value arrived at by the husband's expert on the basis of assumed retirement at age sixty-five, i.e., $186,804. It is, of course, common currency, that a judge faced with conflicting expert evidence, may accept or reject all or parts of the opinions offered. *Fechtor* v. *Fechtor*, 26 Mass. App. Ct. 859, 863 (1989), and cases there cited. But, the wife objects, the limitation on that principle is that the facts and assumptions upon which the expert opinion is based must be defensible. She attacks the opinion of the husband's expert (Peters) on three grounds.

First, she complains that Peters used the wrong weighted average salary, upon which the retirement benefit would be based. The wife's expert, Anderson, had assumed a weighted average salary of $58,252. Peters assumed a weighted average salary of $57,350. It is not a vast difference and seems to have come about from Peters having used a three-year period ending eight months earlier than the three-year period employed by Anderson. *Second*, there is the assumption about retirement age. Peters, it will be recalled, offered four possible retirement ages and left it to the judge to choose. Ander-

son assumed the immediate retirement of the husband. The judge consciously chose to assume that someone in the position of the husband, who was healthy, would wish to work to "normal" retirement age, stay active in his vocation, and collect full pay. We shall return to this point. *Third*, the wife insists that Peters blatantly erred in building a four percent real interest rate into his present value factor; Anderson had used two percent. This seems to have been a difference of opinion, rather than a fundamental flaw in methodology. Peters explained that the four percent rate more accurately reflected potential future limits in government pension benefits.

Although the Peters valuation was attacked, the judge could reasonably have preferred it. It came with more analysis and presentation of the assumptions upon which it was based. It laid out methods and allowed the judge some choices. The judge could come to the conclusion that over-all it was a slightly less result driven report than that submitted by Anderson. The interest factor and, derivatively, correct present value factor, obviously had an element of judgment built in and the judge was free to choose. As a check on whether the Peters analysis falls within the poles of reasonableness, we have applied a method of determining present value recommended in Woodbury, Valuing Pensions of Moderate-Income Divorce Clients, 1 The Best of MCLE Journal 61, 63, 67 (1990). Assuming retirement at age sixty-five and assuming the retirement benefit calculated by Peters (a function of the weighted average salary of the employee), the present value comes out $144,116; assuming the higher retirement benefit used by Anderson, the present value comes out $151,393. Both figures are below that amount which the judge found to be the present value of Edmond Dewan's pension at the time of calculation. One may be skeptical about Karen Dewan's claim that the figure of $186,304 is egregiously low.

We turn to the propriety of assuming age sixty-five as Edmond's retirement age. Edmond had been employed by the government in excess of thirty years at the time the judge calculated the present value of his retirement pension. He

was eligible to retire and collect his pension. The wife argues that for purposes of computing present value in the context of divorce proceedings, a court should assume the earliest possible retirement date for the spouse with the pension. Some courts have thought this a sound principle. See *In re Marriage of Gillmore*, 29 Cal.3d 418, 426 (1981); *Kilbride v. Kilbride*, 172 Mich. App. 421, 437-438 (1988); *Mattox v. Mattox*, 105 N.M. 479, 483-484 (1987). The point, adverted to in the *Gillmore* opinion at 424-425, is that the spouse with the retirement benefits should not be able to manipulate them to impair the other spouse's benefits. That consideration was raised not in a context of present value analysis, but in a case where the wife was to share in the husband's retirement benefits when they were paid out, and they would not be paid out unless the husband retired. We are of opinion that a judge determining present value of a pension should not invariably be required to assume the earliest possible retirement age. See *Dewan I*, at 99. In general, fair value analysis assumes norms. Rates of return are based on market analysis. Fair rents, fair market prices of real estate or businesses, rates of return, utilities rates, and insurance premiums are based on the facts of the marketplace. As we have seen, the earlier the retirement age chosen, the higher the present value and vice-versa. There is no distortion if a judge chooses a retirement age that is the norm, namely, sixty-five. The judge in his findings took notice that he had received no evidence that an earlier retirement age was the custom in Edmond's line of work or that Edmond had intended to take early retirement.[2] The present value determination made by the judge has adequate support in the record and in law.

Once he had fixed a present value on Edmond's pension, the judge, conformably with *Dewan I*, at 101, applied to it a

---

[2]We do not think the use of a customary retirement age for purposes of present value analysis is precluded or counter-indicated by the circumstance that a Probate Court judge may make "a qualified domestic relations order pursuant to a . . . property judgment specifying that private pension benefits be paid to the nonemployee spouse at any time after the employee would be eligible to receive them." *Dewan II*, at 758 n.4. The wife has not argued to the contrary.

fraction, the numerator of which was twenty-two, representing the number of years of marriage, and the denominator of which was thirty-one, the number of years during which Edmond had paid into the retirement fund. The resulting fraction, 22/31, applied to $186,304 produced $132,216, and this was the amount of pension which the judge allocated between husband and wife. Both *Dewan I*, at 98, and *Dewan II*, at 759, concluded that, except for the marital residence, which was being divided fifty-five percent to Karen and forty-five percent to Edmond, the balance of the marital estate was being divided on a roughly equal basis. In formulating a judgment, the judge curiously first subtracted from $132,216, the present value of the portion of the pension to be divided, $33,963, the amount of contributions which had been paid by Edmond into the retirement system. In the initial judgment in this case, the one reviewed in *Dewan I*, the judge had allocated that $33,963 to Edmond. Somehow in putting together his most recent judgment, the judge thought Edmond should have the benefit of that original award. All these subsequent proceedings, however, have had as their purpose to find the correct value for Edmond's pension, and the $33,963 figure should slide into oblivion.

The computations for a judgment which orders the husband to convey his interest in the marital residence to the wife, are as follows: The wife is entitled to fifty-five percent of the agreed equity ($260,000) in the house: $143,000. The husband is entitled to forty-five percent: $117,000. Each spouse is entitled to half of the $132,216 attributable to the pension, i.e. $66,108. As the pension is not a liquid asset, the amount the husband is to receive from the sale of the house shall be reduced by $66,108. The husband, therefore, is to receive $50,892 in exchange for his deed to the wife ($117,000 - $66,108 = $50,892).

There are a few more points which the parties dispute.

The wife claims the present value should have been calculated on the assumption that she would receive a survivor annuity. It is enough to say that a "former spouse annuity" would not have been available under the Federal pension to a

spouse whose marriage ended before May 7, 1985. 5 C.F.R. §§ 831.603, 831.1703, 831.1704 (1990). The Dewan marriage ended in 1982. In any event, whether to require the election of survivorship benefits is properly within the discretion of the Probate Court judge. Election of survivorship benefits diminishes the annual amount payable on retirement and that may or may not be appropriate, depending on the circumstances. See *Petschel* v. *Petschel*, 406 N.W.2d 604, 607 (Minn. App. 1987).

The judge was instructed by *Dewan II* to determine the present value of the pension as of the date of calculation. It was appropriate and equitable to consider the value of the other major asset, the marital residence, as of the same time.

The parties have struggled relentlessly over this pension issue. The judge was trying to achieve relative parity between the two. He could reasonably determine that each would pay her or his own counsel fees. We discern no abuse of discretion. *Drapek* v. *Drapek*, 399 Mass. 240, 248 (1987). *Robbins* v. *Robbins*, 19 Mass. App. Ct. 538, 543 (1985).

The judgment appealed from, entered July 8, 1988, is to be modified so that paragraph 1B shall read: "Concurrently with the transfer of the deed referred to in Paragraph 1A the plaintiff shall pay to the defendant $50,892." Except as so modified, the judgment is affirmed. Neither party is to have costs of the appeal.

*So ordered.*