Jerry L. CONNER, Appellant,

v.

Margaret CONNER, Appellee.

No. S–10273.

Supreme Court of Alaska.

April 18, 2003.

William T. Ford, Anchorage, for Appellant.

Maurice N. Ellis, Law Offices of Maurice N. Ellis, Anchorage, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

## OPINION

MATTHEWS, Justice.

## I. FACTS AND PROCEEDINGS

After a marriage of twenty-nine years, Jerry and Margaret Conner separated on August 13, 1999. Their divorce trial was held on December 14, 2000.

The main issue in this appeal is the division of retirement benefits. During the marriage, Jerry worked as an air traffic controller for the Federal Aviation Administration. He became disabled in 1995 at the age of forty-two. Jerry initially took a disability retirement, but in 1996 he began collecting federal workers' compensation benefits instead, because the workers' compensation benefits were greater and were tax free. Retirement benefits were $2,428 per month, whereas the workers' compensation benefits were approximately $4,100 every four weeks.

Upon divorce, Jerry's workers' compensation benefits were reduced to approximately $3,850 every four weeks.

In the divorce trial, the superior court allocated to Margaret what would have been her monthly share of the retirement benefits from the day of separation to the day of the divorce trial. This was $19,424, one-half of $2,428 times the sixteen months between separation and trial.[1] But this amount appears not to have been used in the trial court's ultimate property division calculations. In addition, the court awarded half of Jerry's workers' compensation payments to Margaret for the next four years. After the four-year period the award to Margaret was reduced to $1,214, one-half of the imputed retirement payments.

During the parties' separation, Margaret was awarded exclusive use of the couple's house. Jerry was ordered to continue to make payments of $1,288 on the home equity loan that was secured by both the house and by their truck. The court also ordered Jerry to pay interim spousal support of $750 per month. In the property division, the court refused to credit Jerry for the loan payments. Jerry was awarded the truck and Margaret the house, but the court allocated the entire remaining $50,000 debt to the house, thus reducing Margaret's net assets by $50,000 and showing Jerry's truck as free and clear. The trial court also ordered Jerry to designate Margaret as the sole beneficiary of any life insurance he carries, and ordered the parties to split the cost of obtaining survivor benefits for Margaret, should Jerry ever elect to receive his retirement benefits.

Jerry challenges these actions on appeal.

## II. STANDARDS OF REVIEW

### A. Property Division

The trial court has broad discretion to make a property division in the manner it determines to be most equitable; this court will not overturn a property division unless it

---

1. The trial court made its calculations based on the sixteen months between the separation and divorce (1,214 × 16 = 19,424) but mistakenly said it was basing its calculations on a fourteen-month period.

is clearly unjust.[2] A three-step process is used to divide marital assets.[3] First, the court determines what specific property is available.[4] Second, the court values that property.[5] Finally, the court equitably allocates the property.[6] The division of property is reviewed for abuse of discretion except that any legal questions that might be involved are reviewed de novo.[7] An equal division is presumed to be most equitable absent findings that warrant an unequal division.[8]

### B. Findings of Fact

 Findings of fact will only be set aside if they are clearly erroneous,[9] that is, if this court is left with "a definite and firm conviction on the entire record that a mistake has been made." [10]

## III. DISCUSSION

### A. The Superior Court Erred in Its Treatment of Jerry's Retirement Benefits.

#### 1. Only a portion of Jerry's workers' compensation benefits replaces his retirement benefits and only that portion should be classified as marital property.

 Jerry argues that his workers' compensation benefits are his separate prop-erty and that the superior court erred when it awarded one-half of these benefits to Margaret. He is partly correct. Workers' compensation payments or disability retirement payments represent income replacement.[11] After divorce, they are regarded as the separate property of the spouse to whom they are paid.[12] In contrast, retirement benefits earned during the marriage are marital property subject to equitable division.[13] But once Jerry's pension matures,[14] Margaret will be entitled to one-half of his retirement benefits.[15] Until then, Jerry's workers' compensation award is a form of income replacement in which Margaret has no interest. Because a portion of Jerry's workers' compensation income will be a substitute for Jerry's regular retirement benefits after maturity of his pension, this portion should be viewed as marital property and divided. Otherwise, when Jerry takes workers' compensation benefits in lieu of matured retirement benefits, Margaret will be deprived of a valuable marital asset.

We thus hold that the imputed retirement portion of this income stream must be separated from the disability-related portion, with the former divided as marital property and the latter left as the employee spouse's separate property. Other courts are in accord.[16]

---

2. *Broadribb v. Broadribb*, 956 P.2d 1222, 1225 (Alaska 1998) (quoting *Cox v. Cox*, 882 P.2d 909, 913–14 (Alaska 1994)).

3. *Wanberg v. Wanberg*, 664 P.2d 568, 570 (Alaska 1983).

4. *Id.*

5. *Id.*

6. *Id.*

7. *Johns v. Johns*, 945 P.2d 1222, 1225 (Alaska 1997) (quoting *Lundquist v. Lundquist*, 923 P.2d 42, 47 (Alaska 1996)); *Cox*, 882 P.2d at 913.

8. *McDougall v. Lumpkin*, 11 P.3d 990, 993 (Alaska 2000).

9. Alaska R. Civ. P. 52(a).

10. *Dunn v. Dunn*, 952 P.2d 268, 270 (Alaska 1998) (internal citation omitted).

11. *Miller v. Miller*, 739 P.2d 163, 165 (Alaska 1987).

12. *Id.*

13. *Edelman v. Edelman*, 3 P.3d 348, 356 (Alaska 2000).

14. Maturity refers to the earliest point at which the worker can receive retirement benefits. *See Laing v. Laing*, 741 P.2d 649, 655 n. 8 (Alaska 1987).

15. We refer here to the payment-upon-receipt method for dividing pension payments. This method was used by the trial court. The other method is to calculate the marital property portion of a pension's present value and take that into account in the property division. *Id.* at 656–57.

16. *See Levy v. Office of Pers. Mgmt.*, 902 F.2d 1550 (Fed.Cir.1990) (applying California law and holding that the component of a disability pension that is based on longevity of service is subject to division but the remainder is the disability component and is separate property); *Villasenor v. Villasenor*, 134 Ariz. 476, 657 P.2d 889 (Ariz.

For example, the Washington Court of Appeals has stated that if the employee spouse "would be receiving retirement benefits but for a disability, so that disability benefits are effectively supplanting retirement benefits, the disability payments are a divisible asset to the extent they are replacing retirement benefits." [17]

Likewise, the Supreme Court of Rhode Island held:

> [W]here the employee spouse elects to receive disability benefits in lieu of a matured right to retirement benefits, only the net amount thus received over and above what would have been received as retirement benefits constitutes compensation for personal anguish and loss of earning capacity and is, thus, the employee spouse's separate property. The amount received in lieu of matured retirement benefits remains ... property subject to division on dissolution.[18]

■ It follows that the court's allocation of $19,424 to Margaret, representing one-half of the retirement benefits from the time of separation to the time of trial, was erroneous because the pension had not yet matured.[19] However, this error appears to be harmless because no order ever effectuated the award of $19,424. To the extent that the award of one-half of the workers' compensation benefits for four years following the date of trial represents an award of Margaret's share of pension benefits, the award is also erroneous until the date of maturity. But for the reasons discussed below, it is possible that some or all of this award may be justified on other grounds.[20] At the end of four years, the trial court required Jerry to begin paying Margaret $1,214, half of his imputed monthly retirement benefits. This was proper because Jerry's pension will have matured when this aspect of the order becomes effective.

### 2. Jerry's fiftieth birthday is an appropriate maturity date.

■ Jerry contends that the applicable maturity date of the retirement benefits should be July of 2009, when he turns fifty-six. He contends that this was his earliest reasonably expected retirement date because air traffic controllers cannot serve beyond the age of fifty-six. Margaret argues that Jerry's retirement benefits should be considered to be mature as of Jerry's fiftieth birthday.

The statute governing Jerry's retirement age is 5 United States Code § 8412(e), which provides that an employee is entitled to retirement benefits (1) after completing twenty-five years of service as an air traffic controller, or (2) after becoming fifty years of age and completing twenty years of service as an air traffic controller.

Because of the disability that Jerry suffered beginning in 1995, he will never have twenty years of service as an air traffic controller. But he would have had twenty years of service as an air traffic controller before reaching the age of fifty had he not been disabled. Therefore the earliest date that the parties could have been expected to begin receiving the pension—again absent the disability—would have been on Jerry's fiftieth birthday. This should mark the earliest possible maturity date and thus, the earliest point at which Margaret had any expectation of realizing benefits from the pension.

The trial court found that Jerry could have elected to receive retirement benefits in 1995,

---

App.1982) (separating the "disability component" from the "retirement component" of a civil service disability retirement annuity); *In re Marriage of Castor*, 249 Mont. 495, 817 P.2d 665, 669 (1991) (civil service disability pensions can have both a "retirement" component and a "disability" component); *Ciliberti v. Ciliberti*, 374 Pa.Super. 228, 542 A.2d 580 (1988) (where part of the disability pension represents retirement benefits, that part remains marital property subject to distribution); *Allard v. Allard*, 708 A.2d 554 (R.I.1998) (a disability pension that serves to replace a retirement pension is divisible to the extent that it replaces the retirement por-

tion). *Allard* lists additional jurisdictions in accord. *Id.* at 558.

**17.** *In re Marriage of Geigle*, 83 Wash.App. 23, 920 P.2d 251, 255 (1996).

**18.** *Allard*, 708 A.2d at 558 (quoting *In re Marriage of Stenquist*, 21 Cal.3d 779, 148 Cal.Rptr. 9, 582 P.2d 96, 101 (1978)).

**19.** *See* discussion *infra* A.2.

**20.** *See* discussion *infra* A.3.

after he became disabled. But Jerry could only receive retirement benefits if he did not receive workers' compensation. Jerry was not eligible for regular retirement at the age of forty-two when he became disabled, or at the time of trial when he was forty-seven. Until the maturity of his pension—2003 at the earliest—Jerry's retirement benefits are wage replacement payments.

Use of the earliest maturity date has been found to be proper in order to protect the nonemployee spouse.[21] While choosing the earliest maturity date may not be required,[22] it is not an error to make such a choice and it is evident that here the trial court intended to choose the earliest possible date. We conclude therefore that the maturity date that should be used in this case is Jerry's fiftieth birthday. This is the date when the workers' compensation payments should be considered to include pension payments that are subject to division.

### 3. The award to Margaret may be justified as rehabilitative spousal support.

Margaret argues that the superior court's award of one-half of the workers' compensation benefits for four years may be justified as rehabilitative alimony. Rehabilitative alimony may be appropriate when one spouse is exiting the marriage with few job skills and limited earning capacity.[23] An award of rehabilitative alimony should be designed to support the spouse while she receives the training and education necessary for her to become self-supporting.[24]

A number of the findings made by the trial court suggest that the court in making the award in question was motivated at least in part by considerations relevant to rehabilitative alimony. The court noted that Margaret did not pursue a career during the marriage and instead raised the parties' two children. Her earning capacity at the time of trial was roughly $10,000 per year, and she was unable to find satisfactory year-round employment. Margaret is currently enrolled in an engineering program from which she should graduate in 2005, and Jerry was ordered to pay her one-half of his workers' compensation benefits until then.

In this case, the award was explicitly a part of the property division ordered by the court and the court referred to it as such. The needs analysis typically required as an accompaniment of an award of rehabilitative alimony is not reflected in the court's findings.[25] We therefore conclude that the four-year award cannot be affirmed based on the current findings. On remand the court may consider whether rehabilitative alimony is appropriate and, if so, may make an award accompanied by appropriate findings.

### B. The Superior Court Did Not Err in Failing To Separately Allocate the Debt on the Truck and the House.

Jerry argues that the trial court erred by failing to divide the liability be-

---

**21.** A Massachusetts court stated:

> [The nonemployee spouse] argues that for purposes of computing present value in the context of divorce proceedings, a court should assume the earliest possible retirement date for the spouse with the pension. Some courts have thought this a sound principle. *See In re Marriage of Gillmore*, 29 Cal.3d 418, 174 Cal. Rptr. 493, 629 P.2d 1 (1981). The point, adverted to in the *Gillmore* opinion at 424–425 [174 Cal.Rptr. 493, 629 P.2d 1], is that the spouse with the retirement benefits should not be able to manipulate them to impair the other spouse's benefits.

> *Dewan v. Dewan*, 30 Mass.App.Ct. 133, 566 N.E.2d 1132, 1134 (1991) (citations omitted).

**22.** *See id.* "In general, fair value analysis assumes norms.... There is no distortion if a judge chooses a retirement age that is the norm" rather than "the earliest possible retirement age." *Id.*

**23.** *See Myers v. Myers*, 927 P.2d 326, 329 (Alaska 1996).

**24.** *Id.* at 329 (citing *Ulsher v. Ulsher*, 867 P.2d 819, 822 (Alaska 1994)).

**25.** *See* AS 25.24.160(a)(2). *See, e.g., Dixon v. Dixon*, 747 P.2d 1169, 1174 (Alaska 1987) (remanding case for specific findings because spouse's "vague education plans" did not support trial court's award of rehabilitative alimony); *Miller v. Miller*, 739 P.2d 163, 165 (Alaska 1987) (rejecting alimony award absent specific findings as to whether wife intended to use alimony for job training); *Carlson v. Carlson*, 722 P.2d 222, 225 (Alaska 1986) (requiring trial court to reconsider alimony award and to state reasons for its decision); *see also Jones v. Jones*, 835 P.2d 1173, 1178–79 (Alaska 1992) (requiring superior court to make specific findings regarding spouse's financial needs when awarding spousal support).

tween the house and the truck. The trial court made Margaret responsible for paying the entire amount of the note and allocated it entirely to the house. Jerry contends that this has the effect of distorting the value of the truck which was awarded to him. In the court's calculation the truck was valued at $23,000 free and clear. Jerry contends that in reality the truck is encumbered and cannot be sold.

Although Jerry is correct that his truck will not be saleable until the note is paid, and although it would have been preferable to have allocated a part of the note to the truck and a part to the house, he did not demonstrate that this could actually be done.[26] The security holder would not necessarily agree to a novation releasing part of the security or one of the jointly responsible parties. Further, vehicles have value even if they are not saleable, as the popularity of long-term leasing of vehicles illustrates. Finally, the trial court found that the note should be paid off within three and one-half years of the hearing. If this is done, Jerry's truck will then be free and clear. We conclude based on these considerations that the court did not err in failing to allocate some portion of the debt to the truck.

### C. The Superior Court Did Not Err by Refusing To Credit Jerry for His Post–Separation Payments on the Parties' Mortgage.

■ Jerry also argues that the trial court erred in failing to give him credit for his interim house payments when he was already required to pay interim spousal support. Trial courts are required to consider payments made from one party's post-separation income to preserve marital assets, but are not required to give credit for such payments in the final property division.[27] This court has stated that "no fixed rule requiring credit in all cases should be imposed. In-

stead ... payments from non-marital income to preserve marital property should be considered as one of the circumstances to be weighed by the trial court in dividing the marital property."[28]

In this case, the trial court specifically considered Jerry's post-separation house payments. The court found that due to the parties' disparate incomes the payments were fair and it refused to give Jerry any credit for the payments. We have routinely upheld decisions where the trial court has denied credit for post-separation house payments because of the disparity in the parties' incomes.[29] Thus, the trial court did not err in refusing to give Jerry credit for the interim house payments.

### D. The Superior Court Erred in Requiring Jerry To Name Margaret as the Sole Beneficiary of His Life Insurance.

■ The trial court ordered "to the extent that [Jerry] currently maintains life insurance, he must designate [Margaret] the sole beneficiary of his life insurance. The reason for this is to protect [Margaret] in the event that [Jerry] passes away before her right to collect the retirement benefits kicks in." No evidence was presented at trial regarding Jerry's life insurance. Jerry contends that this requirement is unnecessary because he has already made an election with the pension administrator that Margaret shall receive a survivor annuity which exceeds her current calculated share of the retirement amount in the event of his death. In his motion for reconsideration, Jerry submitted a letter from the federal office of personnel management which appears to verify his position that Margaret is adequately protected in the event of his death.

■ This court has held that survivor benefits are an "intrinsic part of the retirement benefits earned during the mar-

---

**26.** Jerry asserted at trial that he had researched dividing the note and that it could be done, but he failed to provide the court with a practical method to accomplish the division.

**27.** *Ramsey v. Ramsey,* 834 P.2d 807, 809 (Alaska 1992).

**28.** *Id.*

**29.** *Dodson v. Dodson,* 955 P.2d 902, 912 (Alaska 1998) (upholding trial court's refusal to grant credit to husband for post-separation house payments because the parties had highly disparate incomes); *Harrelson v. Harrelson,* 932 P.2d 247, 253 (Alaska 1997) (same).

riage."[30] Accordingly, when dividing retirement benefits as part of the marital estate, trial courts must protect a spouse's interest in the retirement benefits either by requiring life insurance or by including a clause in the qualified domestic relations order (QDRO) requiring that survivor benefits be paid to that spouse.[31]

In this case, the trial court ordered both life insurance and survivor benefits to protect Margaret's share of Jerry's retirement benefits without adequate findings to support such an order.[32] It would be inappropriate to require Jerry to name Margaret as the sole beneficiary of any life insurance policy if she is already adequately protected by the survivor annuity. On remand, we believe that the court should reconsider requiring life insurance in view of the evidence that indicates that it is not needed.

## IV. CONCLUSION

REVERSED and REMANDED for further proceedings in light of this opinion.

30. *Zito v. Zito,* 969 P.2d 1144, 1147 (Alaska 1998) (internal quotations and citation omitted).

31. *See McDougall v. Lumpkin,* 11 P.3d 990, 996 (Alaska 2000) ("Here, [the wife] either needs life insurance to protect her interest ... or a clause in the QDRO [ensuring her the survivor benefits].").

32. First, the trial court's order dividing the federal retirement plan awards Margaret the maximum former spouse survivor annuity, plus 100% of the balance of any retirement funds if Jerry should die, plus the maximum death benefit as allowed by law. The court's order and findings also state that if and when Jerry elects to receive his retirement pay, Margaret and Jerry will split equally the costs of obtaining survivor benefits for Margaret.

Second, the trial court also ordered Jerry to designate Margaret as the sole beneficiary on any life insurance Jerry maintains "to protect [Margaret] in the event that [Jerry] passes away before her right to collect the retirement benefits kicks in."