LORNA ROSENBERG *vs.* ROBERT M. ROSENBERG. No. 91-P-542. July 21, 1992. *Divorce and Separation*, Division of property, Alimony.

Neither member of the divorcing couple disputes that their capital assets were apportioned lawfully pursuant to G. L. c. 208, § 34. On his appeal, the only issue which the husband presses is that the probate judge erred in awarding the wife alimony of $2,000 per week when her needs could be met with income from the $4,000,000 cash component of the capital assets allocated to her by the divorce judgment.[1] The answer to that point may be King Lear's cry, "O, reason not the need!" Shakespeare, King Lear, Act II, sc. 2.

---

[1]In addition, the wife received noncash assets (objects of art, real estate, and an interest in a savings plan of the husband's company) having a value of approximately $1,380,000.

904           33 Mass. App. Ct.

Rescript Opinions.

In support of his contention that the wife does not "need" alimony, and, therefore, is not entitled to it as matter of law, the husband calculates that she could receive from $251,465 to $320,000 annually in investment income from the $4,000,000 cash component of the marital property division. Buttressing that point, the husband observes that the probate judge found the wife's stated needs were "exaggerated" and that the wife had managed to survive on a support order of $122,980 (post tax) for each of the three years between the couple's separation and their divorce. No doubt the husband is right that the wife should be able to keep the wolf from the door — in accustomed style — on the investment income from the capital assets awarded to her. That does not, however, compel the conclusion that the probate judge abused his discretion by awarding alimony to the wife. See *Bacon* v. *Bacon*, 26 Mass. App. Ct. 117, 121-122 (1988).

To be sure, need is a primary consideration in establishing the level of alimony. That is because the central objective of alimony is, subject to the availability of resources, maintenance of the more dependent spouse in an economic style close to which the spouse had become accustomed during the marriage. *Gottsegen* v. *Gottsegen*, 397 Mass. 617, 623-624 (1986). *Grubert* v. *Grubert*, 20 Mass. App. Ct. 811, 819 (1985). *Kehoe* v. *Kehoe*, 31 Mass. App. Ct. 958, 959 (1992). Need is to be satisfied if it can be, but those cases and the authorities on which they rest are not to be read as necessarily limiting alimony by the dependent spouse's need. Under G. L. c. 208, § 34, alimony and property division are interrelated. *Grubert* v. *Grubert*, 20 Mass. App. Ct. at 819. *Harris* v. *Harris*, 26 Mass. App. Ct. 1004, 1004-1005 (1988). 2A Kindregan & Inker, Family Law and Practice § 1003 (1990). Need is a major element, but obviously not the only one, in an equitable distribution of property under § 34. That statute sets forth fifteen factors to be considered in fashioning the award, of which need is one. See *Robbins* v. *Robbins*, 16 Mass. App. Ct. 576, 580 (1983). In making a comprehensive equitable award under § 34, the judge has discretion in allocating dollars to alimony and to distribution of capital assets. See *Rice* v. *Rice*, 372 Mass. 398, 400-401 (1977); *Ross* v. *Ross*, 385 Mass. 30, 36 (1982).

When the entire marital estate is as large as it is in this case (the joint assets of the parties came to $21,970,830), need, even as related to station in life, recedes as a consideration; equitable distribution of the marital assets becomes the main task. Such an approach is consistent with the view that the dissolution of a long-term marriage — the Rosenbergs had been married twenty-nine years — somewhat resembles the dissolution of a partnership, and that careful thought must be given to the various contributions of the partners to the marital enterprise. See *Bianco* v. *Bianco*, 371 Mass. 420, 422-423 (1976); Inker, Alimony and Assignment of Property: The New Statutory Scheme in Massachusetts, 10 Suffolk U.L.Rev. 1, 3-4 (1975). In that partnership context, it is within the discretion of the judge to award alimony which, taken in isolation, is consistent with the need of

the dependent spouse, even though, were one to calculate investment income from capital assets awarded, the aggregate amount exceeds what is currently needed.

Alimony awards have the advantages of tax benefits to the paying spouse and flexibility, should the financial circumstances of either spouse change substantially. By contrast, a division of capital assets, absent fraud, is not subject to later modification. *Kirtz* v. *Kirtz*, 12 Mass. App. Ct. 141, 148 (1981). In devising the judgment in this case, the probate judge seemed to provide a fund that approximated the wife's need through alimony, while making an allocation of marital assets that undoubtedly provided her an economic base for a life beyond even fairly elevated need. The judge in a supplementary memorandum particularly called to attention that the award of $2,000 per week in alimony was based on the husband's earned income, as distinct from investment income, of $900,000 per year.[2] In the same memorandum, the judge observed that should the husband's earned income materially decrease, he would be entitled to seek a modification of the alimony order. Both parties might then be remitted to living more on their capital, although surely not dipping into it. As to the division of capital assets, the judge allocated approximately seventy percent of them to the husband. The use of alimony to avoid a larger transfer of capital assets to the wife had the benefit of lessening forced liquidation of capital assets by the husband — assets which he demonstrably managed very well.

The judge considered each of the factors set out in § 34. We are satisfied that he acted within the bounds of his broad discretion.

*Judgment affirmed.*

*Edward J. Barshak* for Robert M. Rosenberg.

*Jacob M. Atwood* (*Christine J. Velman* with him) for Lorna Rosenberg.

---

[2]Although the judge used the phrase "earned income of $900,000," his findings show compensation from the husband's employer of $649,480 per year and $291,200 per year from interest and dividends, a total of $940,680 per year. We take it the judge used the words "earned income" in the sense of ordinary income, as distinguished from nonrepetitive capital gains.