## D.L. *vs.* G.L.

No. 01-P-1253.

Middlesex. December 12, 2003. - July 16, 2004.

Present: PERRETTA, KANTROWITZ, & BERRY, JJ.

*Divorce and Separation,* Alimony, Division of property, Relief from judgment.

In a divorce action, the judge did not err in ruling that the husband's interests in certain trusts were too remote or speculative to warrant their inclusion in the marital estate subject to division under G. L. c. 208, § 34, and properly treated the husband's present discretionary interests in the income of the trusts as streams of income for the purposes of establishing alimony and child support. [492-505]

The judge in a divorce action did not abuse her discretion in her valuation and division of certain assets included in the marital estate. [505-507]

The wife in a divorce action failed to demonstrate that the judge's award of alimony was based on a flawed methodology or was grossly inadequate; however, in the circumstances of the case, the judge erred in limiting the duration of the alimony. [507-510]

This court failed to discern error in a Probate Court judge's treatment of certain tax issues arising out of the division of a marital estate [510-511] or in the judge's order granting the husband's motion for relief from judgment [511-512].

COMPLAINT for divorce filed in the Middlesex Division of the Probate and Family Court Department on October 29, 1996.

The case was heard by *Dorothy M. Gibson,* J., and motions for relief from judgment were also heard by her.

*Joel A. Kozol (Matthew S. Kozol* with him) for D.L.

*Paul M. Kane (Joan E. Kolligian* with him) for G.L.

KANTROWITZ, J. At issue is whether the husband's interest in seven trusts, the assets of which are valued in excess of $100 million, should have been included in the marital estate for purposes of division under G. L. c. 208, § 34.[1] Not at issue are

---

[1]The wife's expert testified that the husband's interest in the seven trusts was worth approximately $28 million, the sum including the present value of

millions of other dollars and interests from which both parties will benefit.

The wife appeals from amended supplemental judgments[2] of the Probate and Family Court, claiming that the judge erred (1) in excluding these trusts from the marital estate; (2) in awarding the husband six businesses while awarding her one restaurant; and (3) by awarding insufficient alimony and child support. The husband cross-appeals, alleging the judge failed to consider the tax implications of the judgments. Orders on two motions for relief from judgment are also at issue.

Except for the durational limitation on the alimony award, we affirm.

*Facts.* D.L. and G.L. were married in November, 1986, and separated ten years later in October, 1996. One child was born of the union in March, 1989. Both parties are in their mid-forties, well-educated[3] and in excellent health, although the husband has had issues with alcohol, depression, and anger management.

G.L. was born into a family whose wealth dates back for generations. Numerous complex trusts, in which he has interests, were established by his family at various times prior to the parties' marriage. The husband is also the settlor and beneficiary of a revocable trust (not at issue here) that was created in 1990. The trust, over which he has total control, holds his "personal portfolio" and receives income distributions from four of the contested trusts.[4] During the marriage, it served as the parties' primary source of income.

Shortly before the parties' marriage, the husband purchased, for $350,000, a restaurant in Boston, and made extensive improvements, which were financed by his trust income.[5] At the

the husband's annual "income interest," which the expert valued at slightly over $1 million. The judge did not credit these figures. See note 16, *infra*.

[2] Two judgments entered, as there were two actions for divorce — the wife's complaint and the husband's counterclaim.

[3] The husband holds a degree in finance from Boston University. The wife holds a B.S. in economics from the University of Pennsylvania and is also a nonpracticing attorney.

[4] In 1998, the revocable trust was valued at $2,903,028.32, and the "stream of income distributions" from the four family trusts to the revocable trust totaled approximately $260,000.

[5] During the marriage, and until the birth of their child, the parties jointly

time of trial, the restaurant was worth approximately $525,000. Prior to and during the marriage, the husband, using his own money or money from loans, invested in various corporations and in start-up corporation projects and acquired interests in various entertainment entities, having a combined approximate value of $436,522. Although the income from these businesses has fluctuated, the gross annual income is approximately $151,000. The husband's wealth also enabled him, and later the parties together, to purchase substantial interests in real estate.

The wife also comes from a family of substantial means. She is the "sole present income and principal beneficiary" of an irrevocable trust (the Generation Skipping Trust #1), valued at $1,172,437.50, and has an interest, of "nominal" value, in a second trust (the Generation Skipping Trust #2). She also owns, as a tenant in common with her father, mother, and sister, a summer residence located in Nantucket worth in excess of $4 million. Her father's holdings, as to which she has an expectancy, are valued at over $30 million.

The husband's financial status allowed the parties to enjoy a "wealthy, upper-class lifestyle" and an "affluent, high income" station in life. They lived in an eight bedroom, eight bathroom home[6]; purchased at auction the finest furniture, rugs, china, and jewelry; entertained frequently; traveled extensively; belonged to exclusive private social clubs; and employed a full-time nanny and cleaning help. Although the wife did not make

operated the restaurant on a full-time basis. After the child's birth, the wife remained at home, the husband continuing to operate the restaurant. In March, 1996, the husband became overwhelmed by the daily demands made upon him in operating the restaurant and began to experience more acute alcohol-related problems, which had negative repercussions for the restaurant. Eventually, the husband was admitted to a rehabilitation and treatment center. Thereafter, and throughout the parties' separation, the wife took over the management and daily operation of the restaurant. Under her control, the restaurant business was turned around and, the judge found, "continues to thrive."

[6]The marital home was purchased from the husband's father for $850,000. A down payment, $200,000, derived from the sale of property purchased by the husband prior to the marriage, was paid to the husband's father. At the time of trial, the home had a fair market value of $1.5 million and an equity value of $883,838.

any significant financial contributions to the marriage,[7] she was primarily, if not exclusively, responsible for child rearing and homemaking duties. In addition, she organized the parties' social activities, "managed the household," oversaw the substantial renovations to the marital home, and contributed to the preservation and maintenance of certain of the husband's assets, particularly his restaurant in Boston.

*The judgments.* A main issue at trial, and before us, is whether the seven trusts should have been included within the marital estate. In resolving this question, the judge placed emphasis "on how the parties viewed and treated the trust[s] during the marriage, the structure and terms of each of [the] trust instruments, the history of distributions of income and principal, as well as the internal knowledge of the terms of the particular trust instrument[s] and how they [were] managed."

The judge concluded that the husband had a "present vested interest" in the revocable trust that should be included within the marital estate but that his interests in the seven other family trusts should not. Although these other trusts were excluded from the marital estate, the husband's beneficial interests in them were considered with reference to the husband's opportunity to acquire assets and income in the future. In addition, to the extent that the husband received discretionary income on a regular basis from four of the family trusts, the judge considered such income in calculating the orders for alimony and child support.

In articulating her rationale for excluding the "other trusts," the judge stated that the husband had "either a contingency attached to his interest[s] or his interest[s] [were] purely discretionary or remote." She also noted that prior to the divorce action, the parties had minimal, or even no, knowledge of the nature and value of some of the trusts. Further, there was never any expectation, present or future, during the marriage, to invade and receive any of the husband's principal interests in any of the family trusts; nowhere in the history of the management of the trusts had there been a payment from the corpus of the trusts to either the husband or any other named beneficiary; and

---

[7] The wife entered the marriage with approximately "$20,000.00 in assets, clothing, and personal effects."

the trusts had "never been a part of the fabric of [the] marriage" (other than as income derived by the parties from the trusts).

Also excluded from the marital estate were the wife's interests in the Generation Skipping Trusts, the judge reasoning that they were created after the parties' separation and that the wife had only a "remote contingent" interest in the second trust. In addition, the judge excluded from the marital estate the wife's interest in the Nantucket property, as the wife's father's estate plan did not purport to grant the wife a saleable interest in the property.[8]

The judge concluded that the primary assets of the parties that were subject to equitable division included the marital home, the husband's revocable trust, the husband's business-entertainment entities, and the Boston restaurant. The judge awarded the wife $800,000 for her interest in the marital home; the sum of $1,016,060, representing thirty-five percent of the value of the revocable trust; the Boston restaurant; one-half of the husband's IRA account (valued at $42,021); various bank and IRA accounts valued in excess of $10,000; and jewelry and furniture of significant value. The judge also ordered the husband to pay alimony to the wife in the amount of $1,500 per week, until the wife either remarried or died, or ten years had passed. Child support in the amount of $800 per week, exclusive of the child's private school tuition and educational costs, which the husband was to pay from funds held in a trust for the child, was also ordered. In addition, the husband was ordered to pay the wife $150,000 for counsel fees, over and above the more than $500,000 already paid by him on the wife's behalf.

*The law.* The general principles bearing upon the inclusion of an asset in, or the exclusion of an asset from, the marital estate are summarized in *S.L.* v. *R.L.*, 55 Mass. App. Ct. 880, 882-883 (2002):

> "General Laws c. 208, § 34, defines the scope of a trial

---

[8]The judge considered the Generation Skipping Trust #1 in determining the wife's needs and her opportunity to acquire assets in the future. The judge also considered the value of the wife's interest in the Nantucket real estate as a "future expectancy in determining her ability to acquire property in the future . . . ."

judge's discretion to assign interests in the marital estate to the wife or husband, based on a number of specified factors. . . . Separate from the division of assets within the estate is the question whether certain assets properly are considered a part of the estate. In making the determination of what to include in the estate, the judge is not bound by traditional concepts of title or property. 'Instead, we have held a number of intangible interests (even those not within the complete possession or control of their holders) to be part of a spouse's estate for purposes of § 34.' *Baccanti* v. *Morton*, 434 Mass. 787, 794 (2001), quoting from *Lauricella* v. *Lauricella*, 409 Mass. 211, 214 (1991). '*When the future acquisition of assets is fairly certain, and current valuation possible, the assets may be considered for assignment under § 34.' Williams* v. *Massa*, [431 Mass. 619,] 628 [2000]. . . . *Interests considered too remote or speculative* for inclusion within the estate are instead weighed under the § 34 criterion of 'opportunity of each [spouse] for future acquisition of capital assets and income' in dividing the marital property"[9] (emphasis added).

An "expansive," rather than a restrictive, approach to what constitutes marital property is appropriate. *Davidson* v. *Davidson*, 19 Mass. App. Ct. 364, 371 (1985). See *Bongaards* v. *Millen*, 440 Mass. 10, 24 (2003) (dictum). Whether a party's interest in trust property is part of the estate for purposes of

___

[9]Interests that have been recognized as marital property subject to division include (a) future pension rights, *Dewan* v. *Dewan*, 399 Mass. 754, 755, 757-758 (1987); (b) rights in pending lawsuits, *Hanify* v. *Hanify*, 403 Mass. 184, 186-190 (1988); (c) rights under a contingent fee agreement, *Lyons* v. *Lyons*, 403 Mass. 1003 (1988); (d) rights in unvested stock options, *Baccanti* v. *Morton*, 434 Mass. at 796-797; and (e) certain remainder or other beneficial interests in trusts. See, e.g., *Lauricella* v. *Lauricella*, 409 Mass. at 213-217; *Davidson* v. *Davidson*, 19 Mass. App. Ct. 364, 371-372 (1985); *Comins* v. *Comins*, 33 Mass. App. Ct. 28, 30-31 (1992); *S.L.* v. *R.L.*, 55 Mass. App. Ct. at 884, 886-887.

Interests not recognized include (a) potential future earnings, *Drapek* v. *Drapek*, 399 Mass. 240, 244 (1987); (b) a mere expectancy of inheritance under a will, *Davidson* v. *Davidson*, 19 Mass. App. Ct. at 374; (c) a remainder interest in a trust susceptible of complete divestment upon the exercise of a reserved power to appoint remainder beneficiaries under a will, *S.L.* v. *R.L.*, 55 Mass. App. Ct. at 883; and (d) certain (unspecified) "contingent remainder interests" in trusts, *Williams* v. *Massa*, 431 Mass. at 628.

§ 34 is a question of law. *Lauricella* v. *Lauricella*, 409 Mass. at 213 n.2. But compare *Baccanti* v. *Morton*, 434 Mass. at 796-804 (unvested stock options).

*The seven excluded trusts.* We now turn to the trusts at issue.

(1) *The Children's Trust.* The Children's Trust is an irrevocable trust that was established by the husband's grandmother in September, 1962. Pursuant to its terms, the trust property was divided into equal shares — one for the husband and one for each of his three siblings. Each share, including the husband's, was placed in a separate trust for the benefit of that person and his family (except divorced former spouses), to be administered in accordance with the provisions set out in the margin.[10]

As of December 31, 1998, the husband's separate trust under the Children's Trust was valued at $4,622,706.92. Over the past ten years, one hundred percent of the income produced by the husband's trust share has been distributed annually to him. Those distributions are made automatically pursuant to "stand-

---

[10]The trust provides:

"While that child is living, the disinterested trustees, in their uncontrolled discretion, shall pay to the child such amount or amounts from the net income and principal as the disinterested trustees, in their uncontrolled discretion, think advisable; and from any balance of the net income and principal, the disinterested trustees may also, in their uncontrolled discretion, pay such amount or amounts, in such proportions, as they think advisable, in their uncontrolled discretion, to any one or more of the following persons living from time to time: the child's spouse, the child's issue, and the spouses of such issue. Any net income not so paid may be added to principal at any time or times in the uncontrolled discretion of the disinterested trustees.

"Each separate trust under [the Children's Trust] for a particular child . . . shall terminate upon the earlier to occur of the following two events: (1) the death of the last-to-die of all the following persons: that child, that child's spouse, that child's issue, and the spouses of such issue; or (2) the expiration of a period of twenty years following the death of the last-to-die of all the settlor's issue born before the date of the execution of this instrument. . . . At the termination of [the] trust . . . the then remaining net income and principal . . . shall be distributed per stirpes to the issue then living of the child for whom (and for whose family) the trust was established, and if no such issue of the child is then living, [then as further directed by the terms of the trust.]"

The trust further provides, "References herein to 'spouse' or 'spouses'. . . shall not include divorced former spouses."

ing instructions" from the trustees.[11] Standing instructions remain in effect until they are changed or canceled. In the past thirty-eight years, there has never been a distribution of principal from the trust to the husband.

In arguing that the interest the judge termed as the husband's "present discretionary interest in the principal and income" of the trust should have been included within the marital estate, the wife relies, in part, upon cases such as *Comins* v. *Comins*, 33 Mass. App. Ct. 28 (1992), and *Lauricella* v. *Lauricella*, 409 Mass. at 216-217 (husband's beneficial interest in a trust comprised of real estate, which was "present, enforceable, and valuable," was subject to equitable division). In *Comins, supra* at 30, we held that the judge properly included within the marital estate the wife's interest in a trust that had been settled and funded by her father, the terms of which provided that "the trustee should 'in its discretion pay to [the wife] so much or all of the income and principal of [the trust] as in its discretion it deems advisable to provide for the *comfort, welfare, support, travel and happiness* of [the wife].' " We noted that, "[a]s in *Lauricella* . . . the wife 'has a present, enforceable, equitable right to use the trust property for [her] benefit.' " 33 Mass. App. Ct. at 31.[12] More recently, in *Child* v. *Child*, 58 Mass. App. Ct. 76, 83-84 n.4 (2003), we took a fresh look at the "rights" of a beneficiary of a discretionary trust, and commented by way of dictum. In *Child*, the husband was the beneficiary of two trusts, one providing that "the trustees had sole discretion to distribute income and principal to [him] or for his benefit," the other requiring the trustees to "distribute the income to the husband," but giving them "sole discretion to

---

[11]The present trustees of the Children's Trust are the husband's father, the husband's father's cousin, and a third (apparently unrelated) individual. The trustees of the Children's Trust are also the trustees of all of the remaining trusts at issue in this case, except for the 1921 Trust, which is managed by Fleet Bank, and the Employees' Trust (the trustees of which are the husband's father and the third individual referred to above).

[12]*Comins* has been cited in support of the proposition that trust assets "available" to a spouse are included in the marital property subject to equitable division, see, e.g., *Bongaards* v. *Millen*, 440 Mass. at 24 (dictum); and that "an interest in trust property established by one spouse's parents[] may comprise part of [the] marital estate for purposes of possible division under . . . § 34." *Ruml* v. *Ruml*, 50 Mass. App. Ct. 500, 511 (2000).

distribute the principal to him or for his benefit." *Id.* at 82. We indicated that, with the exception of the husband's right to receive income from the second trust, the husband did "*not* appear to have a 'present, enforceable, equitable right to use [either of] the trust propert[ies] for his benefit' " (emphasis supplied). *Id.* at 83 n.4, quoting from *Lauricella* v. *Lauricella*, 409 Mass. at 216.[13] We noted, however, pointing to the general principles recited in *S.L.* v. *R.L.* (set forth *supra*), that that fact "would not be conclusive in the judge's determination of what portion of the trust res to include [in the marital estate] or the value to be placed thereon." *Child* v. *Child, supra* at 83 n.4. "[G]iven the fact that our expansive view of the marital estate of a party to a divorce may include a beneficial interest in a trust, notwithstanding that distribution of that interest has not occurred and may be conditioned on factors outside the spouse's control . . . , exclusion of the principal of the trust res, or inclusion of the principal at a different and lower value, is not a foregone conclusion based upon the husband's seeming lack of a 'present, enforceable, equitable right to use the trust property for his benefit.' " *Id.* at 83-84 n.4, quoting from *Lauricella* v. *Lauricella, supra* at 216. Though we did not decide the question, we stated that "[a] cursory review of the trust instruments suggests that the husband's interest in the trust principal of both [discretionary] trusts might well be interests which are 'too remote or speculative' to be included in the marital estate, . . . and do not present any opportunity for future acquisition." *Child* v. *Child, supra* at 83 n.4.

*Comins* and *Child,* read together, indicate that while a judge is not necessarily precluded from including within the marital estate for § 34 purposes a party's beneficial interest in a discretionary trust, cf. *Pemberton* v. *Pemberton*, 9 Mass. App. Ct. 9, 20-21 (1980) (recovery from a discretionary spendthrift trust), because of the peculiar nature of such a trust, the trust instrument and other relevant evidence must be examined closely to determine whether that party's interest is too remote

---

[13]One commentator has described a party's interest in a "non-self-settled discretionary trust" as a "contingent equitable" interest. Loring, A Trustee's Handbook § 5.3.4, at 204 (Rounds ed. 2004). See *Pemberton* v. *Pemberton*, 9 Mass. App. Ct. 9, 20 (1980).

or speculative to be so included. Cf. *Davidson* v. *Davidson*, 19 Mass. App. Ct. at 374 (where the court went so far as to note that there may be extraordinary circumstances that would support treating an expectancy under a will as part of the § 34 estate).

In the instant matter, as (apparently) in *Child*, the husband does not have a present, enforceable right to use the principal of the trust. See generally Loring, A Trustee's Handbook § 5.3.3.3(a) (Rounds ed. 2004). Rather, payments from principal to the beneficiaries are to be made, if at all, in the "uncontrolled" discretion of the trustees. See 2 Scott, Trusts § 128.3 (Fratcher 4th ed. 1987); *State Street Bank & Trust Co.* v. *Reiser*, 7 Mass. App. Ct. 633, 635 (1979). Moreover, the trust is generational in nature in that the beneficiaries include not only the husband but his issue and the spouses of such issue. Based on the express terms of the trust and other evidence, the judge found that the trust was set up to benefit the long-term (not near term) needs of the beneficiaries.[14] As we have stated, in the thirty-eight year history of the trust, there has never been a distribution of principal from the trust to the husband. The judge also made extensive findings concerning the checks and balances imposed upon the interested and disinterested trustees, and refused specifically to find, as the wife urged, that the husband's father has "complete power over the decision-making on the discretionary principal and income distributions."[15]

On the foregoing evidence, we think the husband's interest in the trust principal properly may be characterized as "too remote or speculative" to be included within the marital estate. Contrast *Ruml* v. *Ruml*, 50 Mass. App. Ct. 500, 510-512 (2000) (assets of a self-settled discretionary trust over which husband retained broad powers of appointment assigned to wife). Cf. *Bongaards* v. *Millen*, 440 Mass. at 24-26 (dictum). The husband's interest,

[14]The court also found credible the testimony of the husband's father that upon the parties' divorce, although the trustees would examine the circumstances of the beneficiaries in deciding whether to distribute the principal, he did not consider the distribution of the principal as being one of the many options available in taking care of the beneficiaries of the trust.

[15]That the Children's Trust (and certain other trusts which are the subject of this appeal) contains a spendthrift clause would not bar its inclusion in the marital estate. See *Lauricella* v. *Lauricella*, 409 Mass. at 212, 216-217.

however, was rightly considered by the judge under the § 34 criterion "opportunity of each [spouse] for future acquisition of capital assets and income." See *S.L.* v. *R.L.*, 55 Mass. App. Ct. at 883.

To the extent the wife appears to argue that the husband has a separate discretionary interest in the income of the Children's Trust, and that the judge erred in excluding such interest from the marital estate, we perceive no reason to disturb the judgment. Even if we were to assume that the husband's discretionary interest in income could be included within the marital estate for purposes of equitable division, the judge properly could treat it, as she did, as a stream of income for the payment of alimony and child support (at least, as here, where income from the trust has historically been distributed to the husband on a consistent basis). Compare *Andrews* v. *Andrews*, 27 Mass. App. Ct. 759, 761 (1989) (pension in pay-out status); *Crete* v. *Crete*, 29 Mass. App. Ct. 531, 536 (1990) (pension).[16] Contrast *S.L.* v. *R.L.*, 55 Mass. App. Ct. at 882 n.7.

(2) *The 1922 Trust.* The 1922 Trust, having a value of $51,123,777 as of December 31, 1998, was established by the husband's great-grandmother for the benefit of the husband's grandmother, her children, and issue. The trust provides that upon the death of the husband's grandmother "the trustees may thereafter pay the whole or any part of the income . . . to any of her issue, or may divide the whole or any part of the income among . . . any or all of her issue as they may deem advisable, or in their discretion they may accumulate any part or the whole of the income." The husband's grandmother died on April 10, 1990.

---

[16]Another problem facing the wife, both in regard to the Children's Trust and the other trusts at issue, was the valuation of the husband's interest in the trusts. See *Williams* v. *Massa*, 431 Mass. at 628. Compare *Lauricella* v. *Lauricella*, 409 Mass. at 217. The judge rejected, as she was entitled, the expert opinion proffered by the wife. See note 1, *supra*. The wife's terse challenge, in a footnote to her brief, to the judge's rejection of her expert's testimony does not constitute argument as contemplated by Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). See *Commonwealth* v. *Lydon*, 413 Mass. 309, 317-318 (1992) ("[a]rguments relegated to a footnote do not rise to the level of appellate argument"). See also *Lolos* v. *Berlin*, 338 Mass. 10, 14 (1958). In any event, there is nothing in the wife's argument that would cause us to disturb the judge's findings on this point.

During each of the past ten years, the trustees, pursuant to standing instructions, have distributed one hundred percent of the income of the 1922 Trust to the beneficiaries. The husband, as a beneficiary, has received income distributions each year which, in 1998 alone, amounted to $91,615.

The 1922 trust terminates twenty-one years after the death of the husband's grandmother (i.e., on April 10, 2011), at which time the remainder is to be distributed to the issue of the husband's grandmother then surviving in equal shares by right of representation. Thus, the husband would be entitled to share in the principal distribution if he is alive on the date in question and his father is then deceased. If the husband's father is living on April 10, 2011, the husband will receive nothing.

The wife, with an eye to the "vested/contingent dichotomy" expressed particularly in *Williams* v. *Massa*, 431 Mass. at 28 (although vested remainder interests in trusts are subject to division under § 34, unspecified contingent remainder interests in two trusts at issue were "not clearly fixed and enforceable property rights" and were properly excluded from marital estate), argues that the husband has a present vested interest in the income of the trust and a remainder interest that is "vested subject to defeasance." Both interests, in the wife's view, should have been included within the marital estate.

We conclude, for the reasons stated below, that the judge did not err in excluding from the marital estate subject to division the husband's remainder interest in the trust, while weighing that interest under the § 34 criterion of opportunity for future acquisition of capital assets and income.

At the outset, we note that, contrary to the wife's position on appeal, *both* parties proceeded below, through their proposed findings of fact, on the theory that the husband has a *contingent* remainder interest in the 1922 Trust (the wife stating that such interest will vest if the husband's father dies prior to April 10, 2011). Cf. *Larson* v. *Larson*, 28 Mass. App. Ct. 338, 341 (1990), and cases cited. That aside, there is substantial authority to indicate that the husband's remainder interest is, in fact, contingent in nature as it is subject to conditions precedent, including an express condition of survivorship. See Bogert, Trusts and Trustees § 182, at 412-414 (rev. 2d ed. 1979); Lor-

ing, A Trustee's Handbook § 5.3.4, at 203 & n.210 (Rounds ed. 2004); 3 Powell, Real Property § 20.04[6] (1996); *Gordon* v. *Feldman*, 359 Mass. 25, 27 (1971) ("[a]n express requirement of survivorship in a remainder gift," such as "if living," "renders the remainder contingent"); *Hochberg* v. *Proctor*, 441 Mass. 403, 415 n.20 (2004) (dictum); *S.L.* v. *R.L.*, 55 Mass. App. Ct. at 881 n.5 (where a party's remainder interest in a trust depends upon her survival of a parent, it would not be accurate to characterize the interest as "vested"). Compare *Lauricella* v. *Lauricella*, 409 Mass. at 212 (where the trust terms pertaining to survivorship are not included in the opinion). However, even when a party's remainder interest in a trust cannot strictly be characterized as vested, it still may be included, in appropriate instances, within the marital estate.[17] See *S.L.* v. *R.L.*, 55 Mass. App. Ct. at 881, 884, 886-887. Cf. *Baccanti* v. *Morton*, 434 Mass. at 794-795, and cases cited (§ 34, defining "nonvested benefits, rights and funds" as part of a party's estate, clearly indicates that vesting during the marriage is not a requirement). As we have observed, judges are not bound by wooden concepts of title or property, but consider whether future acquisition of assets is "fairly certain."

Here, we think the husband's remainder interest in the 1922 Trust is "too remote or speculative" to be included within the marital estate. While we are cognizant that certain conditions of survivorship might not be a bar to the inclusion of a trust interest within the marital estate, see, e.g., *Lauricella* v. *Lauricella* (discussed in note 17, *supra*); *Davidson* v. *Davidson*, 19 Mass. App. Ct. at 371-372 (remainder interest of husband, who was thirty-three years of age at the time of divorce, would be distributed free of trust when his mother [then living] died and he attained the age of thirty-five); *S.L.* v. *R.L.*, 55 Mass. App.

---

[17]Conversely, there is suggestion in cases such as *Lauricella* v. *Lauricella*, 409 Mass. at 216, that even when a remainder interest is determined to be vested, a court will closely scrutinize the particular circumstances of each case. In *Lauricella*, the court found that the husband had a vested right to certain trust property, "subject to divestment only if [the husband did] not survive until the trust terminate[d] according to its terms." The court took careful note that the husband was "only about twenty-six years old, [and] the likelihood is that he will survive [the roughly eighteen years required] to receive his share of the title." *Ibid.*

Ct. at 884 (wife's interests in trusts subject only to her surviving her mother), the husband's interest in the present trust is conditioned not only upon his survival to April 10, 2011, but upon his father's death by that date. At the time of trial, the husband's father was sixty-seven years of age. (The parties point to no evidence concerning his health.)[18] Unlike the circumstances in *Lauricella*, it cannot be said on this record that there is a "likelihood," much less a fair certainty, that the husband's father will not be alive on April 10, 2011, and the husband will be alive on that date. "A final and equitable property division under § 34 [which is not modifiable] should not be based on speculative assets." *Williams* v. *Massa*, 431 Mass. at 628, quoting from *Hanify* v. *Hanify*, 403 Mass. 184, 193 (1988) (Liacos, J., concurring in part and dissenting in part).[19] Compare *Davidson* v. *Davidson*, 19 Mass. App. Ct. at 372 (noting that the remainder interest there involved may have been at the "outer limits" of a property interest that properly may be included within the marital estate subject to division).

For substantially the reasons we have stated with respect to the Children's Trust, the judge properly could treat the husband's present discretionary interest in the income of the 1922 Trust as a stream of income for the payment of alimony and child support.

(3) *The Great-Grandfather Trust.* The "Great-Grandfather Trust" (our designation), having a value of $30,337,769 as of December 31, 1998, was established under the will of the husband's great-grandfather for the benefit of the husband's grandmother and her issue. Upon the death of the husband's grandmother, the trustees were granted discretion to distribute income to one or more of her issue as they deemed advisable. During the past ten years, the trustees have distributed one hundred percent of the trust income to the beneficiaries. The

[18]Although the judge allowed the husband's expert to testify concerning the probability that the husband would be alive and the husband's father would be deceased at the time of termination of certain trusts, the judge ultimately rejected as speculative the testimony with respect to statistical life expectancy percentages.

[19]We note also that "practical difficulties" presented by a division of property that a party does not own may, at times, militate against the inclusion of an asset within the marital estate. See *Williams* v. *Massa*, 431 Mass. at 628.

husband's father has waived his receipt of income distributions in favor of his four children. Between 1990 and 1998, the husband received income distributions aggregating $512,967. The distributions are made automatically, pursuant to standing instructions.

The trust terminates on April 10, 2011. At that time the remaining assets of the trust will be distributed to the then living issue of the husband's grandmother, by right of representation. The husband will receive a distribution of these assets only if his father is not living at the time. If the husband's father is alive on April 10, 2011, the husband will receive nothing.

The husband's interests in the Great-Grandfather Trust are similar to his interests in the 1922 Trust. For the reasons we previously have expressed with reference to the 1922 Trust, we think that the husband's remainder interest was properly excluded from the marital estate and considered in relation to his opportunity to acquire future assets and income, and that his present discretionary interest in the income of the trust properly could be treated as a stream of income for alimony and child support.

(4) *The 1921 Trust.* Under the terms of the 1921 Trust, having a value of $26,595,755, as of December 31, 1998, the husband has no present interest in income and, in fact, has never received income from the trust. The judge thus properly did not look to the trust as a stream of income for child support or alimony. The trust is to terminate on April 10, 2011, at which time the principal will be distributed to the husband's father and the husband's aunt, per stirpes. Whether the husband will share in the trust assets is contingent upon whether "the husband is living and his father is deceased at the time the trust terminates . . . ." As with the 1922 Trust and the Great-Grandfather Trust, the husband's remainder interest was properly excluded from the marital estate and considered only in relation to the husband's opportunity to acquire future assets and income.

(5) *The 1934 Trust.* The 1934 Trust, worth approximately $6,295,243 as of December 31, 1998, was established by the husband's great-grandmother in December, 1934, for the benefit of the husband's father and his issue. The trust provides that

during the lifetime of the husband's father, "the Trustees may . . . pay the whole or any part of the income to him or pay to or apply for the benefit of any of his issue the whole or any part of the income, or may divide the same among any or all of such persons in such proportions as the Trustees may deem advisable, or in their discretion they may accumulate any part or the whole of the income." The trust further provides that upon the death of the husband's father, the trustees may, "during the continuance of the trust, pay the whole or any part of the income to [the father's] wife who shall survive him or pay to . . . any of his issue the whole or any part of the income . . . ." The trust terminates twenty-one years after the death of the husband's father, at which time the trust assets are to be distributed (after certain payments to a surviving wife of the husband's father) to the issue of the husband's father then surviving in equal shares by right of representation.

During the ten years preceding trial, the trustees have distributed one hundred percent of the trust income to the beneficiaries, including the husband. The husband's remainder interest, which is conditioned not only upon his surviving his father, but also upon his surviving him by twenty-one years, was properly excluded from the marital estate as remote and speculative. Compare *Davidson* v. *Davidson*, 19 Mass. App. Ct. at 371-372; *S.L.* v. *R.L.*, 55 Mass. App. Ct. at 884. The judge properly considered that interest with respect to the husband's opportunity for future acquisition of capital assets and income. The judge also could find that the husband had no more than a present discretionary interest in income from the trust, and thus could treat the income distributions as a stream of income for the payment of alimony and child support.

(6) *The 1962 G.L., Sr., Trust.* The 1962 G.L., Sr., Trust, having a value of $8,330,435, as of April 30, 1998, was established by the husband's grandmother. By the terms of the trust, "the disinterested trustees, in their uncontrolled discretion," are permitted to pay to the husband's father so much of the net income and principal as they think advisable, and from any balance thereof, the trustees are permitted to pay such amounts of income and principal as they think advisable to the husband's father's spouse, the issue of the husband's father, and the

spouses of such issue. The husband's father is also granted a specific power of appointment, exercisable by will, over the remaining principal of the trust. In default of appointment, the trust principal will be divided into as many equal shares as there are children then living of the husband's father per stirpes.[20]

The husband's remainder interest in the trust was properly excluded from the marital estate as it "was susceptible of complete divestment upon the [husband's father's] exercise of the power reserved to [him] to appoint the remainder trust beneficiaries under the provisions of [his] will." *S.L.* v. *R.L.*, 55 Mass. App. Ct. at 883. As such, the husband's interest under the trust was the equivalent of an expectancy under a will. *Id.* at 883-884. See *Davidson* v. *Davidson*, 19 Mass. App. Ct. at 374. The judge did, however, consider the trust in determining the husband's opportunity for future acquisition of capital assets and income. The husband's present interest in the income and principal of the trust was properly excluded from the marital estate as the husband had no right to use the income and principal, any payments to him of income or principal were left to the "uncontrolled" discretion of the trustees, the husband is but one of a number of beneficiaries of the trust, and there has never been a distribution of income or principal from the trust to the husband.

(7) *The Employees' Trust.* The Employees' Trust, with an approximate value of $1,972,107, as of December 31, 1998, was established by the husband's grandmother in 1963 for the benefit of her former employees and their wives. The trust provides that the trustees may, in their "uncontrolled discretion," pay to one or more of any of the former employees and their wives such amounts of the net income and principal as the trustees think appropriate. The trust further provides that the trustees, "in their uncontrolled discretion," may make further distribu-

---

[20]The principal continues in trust with the trustees continuing to have absolute discretion to pay net income and principal as they deem advisable in any proportion amongst the husband and his siblings, and their children and spouses. The trust terminates upon the death of the last survivor of a child [i.e., the husband and his siblings], a child's spouse or issue and their spouses, or twenty years after the death of the last to die of the husband and his three siblings, at which time the principal is to be distributed.

tions from principal as follows: "If and whenever any such distribution is made, it shall be made in equal shares to or for the benefit of the donor's grandchildren then living . . . provided, however, that while any of the beneficiaries described . . . above [employee and spousal beneficiaries] is living, no distribution of principal . . . shall be made unless in the trustees' opinion the amount of principal left in this trust after such distribution (together with the income to be produced by such remaining principal) will be amply adequate to provide for the payments which the trustees may determine . . . to make . . . [to said beneficiaries]."[21] The trust terminates "on the death of the last to die of [the employees and their wives] who were born prior to the date of execution of [the] trust [instrument]." At that time, the then remaining assets "shall be distributed in equal shares to the donor's grandchildren then living and the issue then living of any grandchild of the donor then deceased . . . ."

There was evidence at trial that there were *at least* two or three beneficiaries of the trust still living.

Where, as here, the evidence fails to disclose the number or the ages of the employee-spousal beneficiaries of the Employees' Trust, we think the judge properly excluded the husband's remainder interest in the trust from the marital estate as too remote or speculative, while considering it in determining his opportunity for future acquisition of capital assets and income.[22]

*Other assets.* In assigning the husband one hundred percent

---

[21]Notwithstanding the provisions of the trust concerning the trustees' discretionary power to distribute principal during the lifetime of the beneficiary employees and their wives, the wife seems to have proceeded below, through her proposed findings of fact, on the theory that the husband's interest in the trust is as a remainderman.

[22]We note that there is suggestion in the judge's conclusions of law that even if she had included the husband's interests in the various trusts within the marital estate, she would not have altered the assignment of assets to the wife. Indeed, the judge stated that, "[w]ith the exception of the Husband's individual trust, I did not find any justification for an invasion or reallocation of the other trusts." The judge referred specifically to the nature of the trusts, the parties' lack of knowledge concerning the trusts (and implicitly the wife's lack of contributions to the trusts), the parties' ownership of valuable assets apart from the trusts, and the opportunity of each party to acquire assets in the future. See generally *Williams* v. *Massa*, 431 Mass. at 625-627. It is also significant that this was a medium-term rather than a long-term marriage.

of his minority interest in six business-entertainment entities, the judge stated that the award was "fair and just upon [the] facts and circumstances, especially since I am assigning [the Boston restaurant], having a total, agreed upon, value of $525,000.00, to the wife . . . . These particular assignments to the Husband and Wife are almost an even trade."

The wife argues that (1) the parties never agreed upon the value of the Boston restaurant; (2) although the judge questioned the "soundness" of the husband's own valuation of his interest in the six businesses [i.e., $436,522.18], the judge appeared to have adopted the valuation; and (3) there was no credible evidence to show that the Boston restaurant was worth as much as the husband's business-entertainment entities, particularly in view of the wife's responsibility for a line of credit in the amount of $405,000, personal to the husband, but for the benefit of the restaurant.

Although the judge's findings are not free from problem, we perceive no reason to disturb the judgments. While we agree with the wife that the appellate record fails to disclose an agreement between the parties concerning the valuation of the Boston restaurant, the husband testified, and represented on his financial statement, that its value (including the liquor license) was $525,000. There was also evidence, and the judge found, that the wife had "turned around" the Boston restaurant and caused it to become a thriving enterprise.[23] The wife offered no opinion of value.   -

Although the judge stated initially in her findings that the husband's method of valuation of his business-entertainment

---

[23]In support of her argument that the Boston restaurant (an asset the wife requested be assigned to her) was not equivalent in value to the husband's entertainment entities, the wife asserts that the restaurant was a tenant at will and that its operation for 1997 showed a loss of $12,147. At trial, the wife testified that when she began to oversee the activities of the restaurant in August, 1996, the conditions there were a "disaster" — the restaurant was understaffed, bills had not been paid, and cash had not been counted, among other things. Under her watch, back taxes and other obligations were addressed, additional staff hired, and renovations made. The judge properly could find, as she did, that the wife had "turned around" the business and "[t]o date, the business continues to thrive under her management and control." The judge also noted that the wife had had personal bills, including, in 1997, airline tickets in the amount of $4,437, paid for by the restaurant.

entities "appears to be reasonable," she ultimately questioned the "soundness" of the valuations and stated that she had not adopted specifically the values offered by the husband. The judge noted, however, that she had relied upon the husband's valuations "as far as [they] give[] me a neighborhood of the total value of his interest held in these entertainment entities . . . ." While later findings of the judge indicate that she, in fact, used the actual values testified to by the husband, we think, in context, the judge was simply utilizing the husband's figures to make a fair approximation of the business values.

Finally, the judge's statement that the foregoing assignments (i.e., the assignment of the business-entertainment entities to the husband and the Boston restaurant to the wife) constituted "almost an even trade," while, perhaps, facially accurate, was unfortunate when considered with the judge's order that the wife was to be responsible for the line of credit in the amount of $405,000. In all events, the judge's findings on various post-judgment motions filed by the parties indicate that the court fashioned its equitable division with full knowledge of the line of credit and with the intent to make the wife responsible for it.[24] While we may have decided the issue differently, we cannot say the judge abused her discretion. See *Bacon* v. *Bacon*, 26 Mass. App. Ct. 117, 122 (1988) (Kaplan, J., concurring); *Richman* v. *Richman*, 28 Mass. App. Ct. 655, 667 (1990).

*Alimony.* The wife argues that the court's award of alimony of $1,500 per week must be set aside as it is based on a flawed methodology, is grossly inadequate, and is improperly limited to ten years. Except for the durational limitation on the award, we perceive no reason to disturb the order for alimony.

The principles governing awards of alimony are well established. Need is a "primary consideration," *Rosenberg* v. *Rosenberg*, 33 Mass. App. Ct. 903, 904 (1992), and is "measured by the 'station' of the parties — by what is required to maintain a standard of living comparable to the one enjoyed during the marriage." *Grubert* v. *Grubert*, 20 Mass. App. Ct.

---

[24]The judge stated at one point that she envisioned that the wife could use restaurant profits to pay off the loan. In fact, the judge found that either the "Corporation [that owned the restaurant] or the Restaurant" had paid the amounts due on the line of credit until July 23, 2000.

811, 819 (1985). See *Rosenberg* v. *Rosenberg, supra.* Although alimony and property division serve different purposes, see *Heacock* v. *Heacock,* 402 Mass. 21, 24 (1988); *Heins* v. *Ledis,* 422 Mass. 477, 482-483 (1996), they are interrelated remedies that cannot be viewed apart. See *Grubert* v. *Grubert,* 20 Mass. App. Ct. at 818; *Andrews* v. *Andrews,* 27 Mass. App. Ct. at 761. Upon consideration of the factors specified in G. L. c. 208, § 34, a judge has considerable discretion in fashioning an alimony award. *Heins* v. *Ledis,* 422 Mass. at 480-481.

At trial, the wife listed her weekly living expenses at $5,736.86. In rejecting this figure, the judge found that many of the expenses claimed by the wife were improperly included in her financial statement as they were not paid by her directly,[25] compare *Williams* v. *Massa,* 431 Mass. at 634 & n.14, "were anticipatory/seasonal in nature, or just seemed completely out of place as a legitimate weekly expense."[26] After adjustments, the judge found that the wife's average weekly living expenses were approximately $2,900. The judge made further adjustments to this amount apparently based, in part, on the wife's lack of credibility concerning her financial situation. The judge concluded that the wife's average weekly living expenses were $2,000 and ultimately awarded her alimony in the amount of $1,500 per week.

In challenging the judge's methodology, the wife argues, among other things, that the judge "failed to recognize that the consequence of awarding the marital home to [the husband] and $800,000 to [her], which the Court viewed as roughly equivalent to the equity in the home, was that [she] would have to buy a comparable home that was consistent with her lifestyle during the marriage; and if she used the $800,000 as a down payment, she would have to make the payments on a mortgage . . . ." It is enough to say that the judge, in fashioning the total financial package, was not required to proceed on the assumption that it was necessary for the wife to purchase a home of roughly

---

[25]For example, the judge adjusted the wife's expenses to delete the mortgage on the marital home and the child's therapy expenses, both of which were being paid by the husband.

[26]The judge also noted that the wife spent extravagantly during the marriage and refused to adhere to a budget as recommended by the husband, which contributed to the marital discord.

equivalent value to that lived in by the parties during the marriage (and to carry a substantial mortgage thereon). See *Williams* v. *Massa*, 431 Mass. at 626 ("an equitable, rather than an equal, division of property is the ultimate goal of G. L. c. 208, § 34").

In all events, we think it is apparent that the financial arrangement fashioned by the court, together with other assets, sources of income, and opportunities available to the wife, will provide her with resources sufficient to effectuate the court's stated intention of allowing her to enjoy an affluent lifestyle. In arriving at the support order, the judge considered in detail each of the factors specified in § 34, and noted that there were circumstances in the case that enhanced the wife's financial position and "limit[ed]" or "diminish[ed]" her need for support. More specifically, the judge found that (1) the wife will not only receive substantial assets by way of the equitable division, but will be able to generate investment income from those assets,[27] see *Williams* v. *Massa*, 431 Mass. at 634-635; (2) the wife has a right to all quarterly income from the Generation Skipping Trust #1, the principal of which is valued at $1,172,437.50, and a right to withdraw up to five percent of the principal balance of the trust each year; and (3) the wife has excellent restaurant managerial and other skills, and can contribute, at least minimally, to her own expenses either from restaurant profits or by obtaining part-time or full-time employment.[28] See *Heins* v. *Ledis*, 422 Mass. at 484 ("[t]he . . . vocational skills[] and employability of the parties must be

---

[27]We find unpersuasive the wife's argument that the property assignment will leave her with less than $180,000 to invest because the $800,000 awarded her was to assist her in the purchase of a new home, and she will be responsible for her liabilities, listed at $521,503, as well as the husband's personal note on the Boston restaurant. Even if we were to exclude the wife's interest in the former marital home as a potential source for investment, the judge's award leaves assets of significant value which can be invested. As we have indicated, the judge envisioned that the wife will be able to use profits from the Boston restaurant to make payments on the note. Moreover, a portion of the wife's liabilities involve family loans and it is unclear from the judge's findings when those loans are to be paid.

[28]The husband testified that the last annual salary he drew from the Boston restaurant for himself and the wife was approximately $52,000. The wife testified that at one point, apparently after she took over the management of the restaurant, she also received a salary from the restaurant.

considered when awarding alimony"). Compare *Frederick* v. *Frederick*, 29 Mass. App. Ct. 329, 334 (1990). The judge also considered, as we have indicated, the wife's opportunity to acquire considerable assets in the future as a result of her family's wealth, which was estimated to be $30 million.[29] In these circumstances, we cannot say that the judge abused her ample discretion in fashioning the order for alimony.

In limiting the duration of the wife's alimony award to ten years, the judge stated in her findings that she had considered the wife's age, health, education, vocational skills, and experience. She also noted in her conclusions of law that alimony payments for a limited duration are warranted after a short-term marriage. Putting to one side the fact that the judge noted in other findings that this was a marriage of medium length, we think the judge erred in limiting the duration of alimony in the circumstances presented here. It is simply uncertain at this juncture whether the wife's future income from employment will render alimony unnecessary. See *Goldman* v. *Goldman*, 28 Mass. App. Ct. 603, 612-613 (1990); *Martin* v. *Martin*, 29 Mass. App. Ct. 921 (1990); *Katz* v. *Katz*, 55 Mass. App. Ct. 472, 482-483 (2002). Furthermore, to the extent the judge may have had in mind the wife's expected inheritance from her parents, that, also, is too indefinite in time to warrant the ten-year limitation on the payment of alimony. Needless to say, should their circumstances change in the future, the parties are free to return to court for an appropriate modification order.

*Child support.* The wife's brief assertions concerning the court's order for child support either do not rise to the level of argument contemplated by Mass.R.A.P. 16(a)(4), as amended, or would not require a reversal of the order.

*The husband's appeals.*[30] *Tax consequences of property assignment.* The husband argues that the judge erred in failing to "tax effect" the husband's payment to the wife of $1,016,060

---

[29]The wife's opportunity to acquire substantial assets in the future may also render less important the preservation of the corpus of the Generation Skipping Trust #1.

[30]We consider the husband's appeal from the amended supplemental judgments and his appeal from the November 9, 2000, denial of his motion for reconsideration or, in the alternative, for relief from judgment.

from his revocable trust. More specifically, the husband claims that the court's order for cash payment to the wife will require him to sell stock and equities comprising the corpus of the revocable trust and will cause him to incur substantial capital gains taxes.

In dividing marital assets, "a court should [generally] consider and should minimize adverse tax consequences." *Fechtor* v. *Fechtor*, 26 Mass. App. Ct. 859, 866 (1989). Where, however, the parties have not requested the court to consider potential tax consequences and "do not introduce reasonably instructive evidence bearing on those tax issues, the probate judge is not bound to grapple with the tax issues." *Ibid.*

Here, the judge found that the husband failed to submit adequate evidence at trial concerning tax issues[31] and that, in his motion to amend supplemental judgments (at which time he was fully apprised of the court's orders for property division), the husband failed to provide the court with citations to tax law, illustrative calculations, or other pertinent information. See *Fechtor* v. *Fechtor*, *supra* at 867. Compare *Williams* v. *Massa*, 431 Mass. at 629 (where the husband testified, among other things, concerning his applicable tax rates). In all events, the judge made clear in her findings that, even if the husband had offered testimony from a tax expert, which he "consciously" failed to do, the order would have been the same given the contentious nature of the litigation and the possibility that the husband might attempt to transfer to the wife those stocks and equities that had a basis least favorable to the wife. See generally Kindregan & Inker, Family Law and Practice § 42.9 (3d ed. 2002). The judge's findings thus evince some consideration of tax issues. In the circumstances, we fail to discern error.

*Motions under rule 60 of the Massachusetts Rules of Domestic Relations Procedure.*

*The order allowing the husband's rule 60(a) motion.* The wife argues that the judge erred in allowing the husband's motion pursuant to Mass.R.Dom.Rel.P. 60(a), in which he sought to correct and clarify the judgment to make clear the wife's

---

[31]The judge noted that the husband, while conceding his lack of competent tax knowledge, testified as to the basic nature of the acquisition of certain assets.

responsibility for a line of credit used for the benefit of the Boston restaurant. Even if we were to ignore the deficiencies in the wife's "argument,"[32] on review of the trial judge's findings and judgments and the memorandum and order on the husband's motion for relief, in which the judge indicated that it was her intent to assign both the Boston restaurant and the line of credit (loan) to the wife, we cannot say that the judge erred in entering the rule 60(a) order. *Gagnon* v. *Fontaine*, 36 Mass. App. Ct. 393, 400 n.7 (1994) (appellate court will "grant deference to the judge's determination of his or her own contemporaneous intent in framing the judgment"). See *Chapman* v. *University of Mass. Med. Center*, 423 Mass. 584, 589 (1996); *DeLuca* v. *De-Luca*, 26 Mass. App. Ct. 191, 192-195 (1988).

*The order denying the wife's rule 60(b) motion.* The wife's five-sentence contention (of which two sentences are generalized assertions of error) regarding the denial of her rule 60(b) motion concerning the value of the marital home, made without reference to or discussion of supporting authority, does not rise to the level of appellate argument. See *Lolos* v. *Berlin*, 338 Mass. at 14.

*Summary.* While we continue to adhere to an expansive approach to inclusion of assets in the marital estate, that principle is not without limits. If the scenario in *Davidson* v. *Davidson*, 19 Mass. App. Ct. at 372, approached the "outer limits" of what could be included in the marital estate, the trusts here traversed those boundaries. Trusts requiring that, upon their dissolution on April 10, 2011, the husband cannot realize a remainder interest unless he is alive and his father is deceased (the 1921, 1922, and Great-Grandfather Trusts) belie the requirement that the acquisition of assets be "fairly certain." *Williams* v. *Massa*, 431 Mass. at 628. Neither do the other trusts excluded from the marital estate here satisfy the *Williams* requirement. See, e.g., the 1934 Trust (requiring that the husband outlive his currently living father by twenty-one years); the Employees' Trust (requiring that all members of a class be deceased, where neither the number of class members nor their ages were established at trial); and the 1962 G.L., Sr., Trust (a trust

---

[32]The wife's argument is less than two pages in length and is devoid of citation to legal authority addressing rule 60(a).

susceptible of complete divestment). Our conclusion is further buttressed by the fact that under three of the trusts (the 1921, 1962 G.L., Sr., and the Employees' Trusts) neither income nor principal was distributed to the husband. A close reading of the trust instruments further supports our conclusion. Lastly, we observe that, while the trusts at issue were not included in the marital estate subject to division, the judge did weigh them under the § 34 criterion of opportunity for future acquisition of capital assets and income and, to the extent the husband has present discretionary interests in income from the various trusts, as streams of income in establishing alimony and child support.

*Conclusion.* The amended supplemental judgments dated July 27, 2000, are modified by striking therefrom, in paragraph 21, the provision limiting to ten years the husband's alimony obligation to the wife. As so modified, the amended supplemental judgments are affirmed. The orders dated November 9, 2000, denying the husband's motion for reconsideration or, in the alternative, motion for relief from judgment, are affirmed. The orders dated November 1, 2002, allowing the husband's motion for relief from judgment and denying the wife's motion for relief from judgment are affirmed.

*So ordered.*